UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RELIANCE STANDARD LIFE INSURANCE
COMPANY,

                        Plaintiff,

     -against-

ELENA LUNA,
ANGELA M. CABALLERO, and
CARMEN LILIANA SAENZ FEIJOO
DE CABALLERO,
                    Defendants.
-----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
21-0189 (GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this life insurance proceeds-interpleader action, on referral from the Honorable Gary R. Brown for Report and Recommendation, are (1) Defendant Angela M. Caballero's ("Angela") motion for summary judgment ("Angela Mot. for Summary Judgment"), Docket Entry ("DE") [42], and (2) Defendant Carmen Liliana Saenz Feijoo de Caballero's ("Carmen") cross-motion ("Carmen Cross-Mot."), DE [42-5], for summary judgment.[1]

By way of Complaint ("Complaint" or "Compl."), DE [1], filed in this Court on January 13, 2021, Plaintiff Reliance Standard Life Insurance Company ("Reliance") commenced this action requesting that the Court resolve conflicting claims of Elena Luna ("Luna"), Angela and Carmen to the proceeds of the life insurance policy held

---

[1] Carmen appears *pro se* and has proceeded without assistance of counsel for the majority of this litgation. Since January 2023, however, she has received substantial assistance with her pleadings from the Hofstra Pro Se Legal Assistance Program. The Court acknowledges the significant efforts of this Program in helping Carmen draft pleadings.

by deceased Ricardo Caballero ("Ricardo" or the "Decedent"), who at different times was married to each of them. *See* DE [1-2], Exhibits ("Exs.") G-L. For the reasons set forth herein, the Court recommends (1) denying Angela's Motion for Summary Judgment in its entirety, and (2) granting Carmen's Cross-Motion in its entirety.

## I.    BACKGROUND

The facts herein are taken from the parties' Local Rule 56.1 statements, declarations and exhibits, and from the exhibits to Reliance's Complaint.[2] Except where indicated, these facts are not in dispute.

### A. Ricardo's Marriages

On March 16, 1973, Ricardo and Carmen were married in Peru. *See* Declaration of Carmen Liliana Saenz Feijoo de Caballero in Support of Cross-Motion for Summary Judgment ("Carmen Decl. in Support of Cross-Motion"), DE [44-3], ¶ 4; Resolution Denying Acknowledgement of a Divorce Judgment Issued by a Foreign Court ("Resolution"), DE [44-6], at 3. Carmen and the Decedent had a son together. *See* Affirmation of Daniel Friedman in Support of Motion for Summary Judgment ("Friedman Aff. in Support of Angela Mot."), DE [42-2], ¶ 20; *see also* Carmen Liliana Saenz Feijoo de Caballero's Counter-statement of Undisputed Facts in Support of Cross-Motion for Summary Judgment ("Carmen Rule 56.1 Statement"), DE [36], at 7, ¶ 2. At a time that is not clear from the record, Ricardo subsequently left Peru and moved to the United States. *See* Friedman Aff. in Support of Angela Mot., ¶ 17; *see*

---

[2] *See Kahlon v. Project Verte Inc.*, No. 20-CV-3774 (MKV), 2022 WL 861638, at *8 (S.D.N.Y. Mar. 23, 2022) (considering a document attached to operative complaint as part of the summary judgment record); *E. Vill. New Deli Corp. v. United States*, No. 20-CV-7356 (PAE), 2021 WL 5507048, at *1, n.1 (S.D.N.Y. Nov. 23, 2021) (same).

*also* Carmen Rule 56.1 Statement, ¶ 4. Carmen, however, never left Peru between 1973 and 2021 and first entered the United States in 2022. *See* Certificate of No Migratory Movement, DEs [44-2], [46-2]; Defendant Angela M. Caballero's Response to Carmen Rule 56.1 Statement ("Angela Resp. to Carmen Rule 56.1 Statement"), DE [43-2], ¶ 17. Nevertheless, on or about November 7, 1985, Ricardo filed for and received a divorce from Carmen in New York State, *see* Angela Resp. to Carmen Rule 56.1 Statement, ¶ 6, and the Divorce Judgment issued by the New York State Supreme Court on November 7, 1985, ("1985 Divorce Judgment"), DE [7-1], states that Carmen was *personally* served within the State of New York. *See* 1985 Divorce Judgment at 1.

On or about April 25, 2011, Carmen filed a demand for support against Ricardo in Peru in the Third Justice of the Peace Court in and for Lince and San Isidro. *See* Demand for Support, DE [44-4]. She requested that that court order the Decedent to pay her 50 percent of his future salary and other earnings from his employment in the United States with Goya Foods, Inc. ("Goya"). *See* Demand for Support at 3. Later that year, Ricardo responded by requesting that the Superior Court of Justice in and for Lima (Peru) recognize his divorce judgment in New York. *See* Resolution at 3. Carmen answered his petition, stating that she had not been summoned in the divorce proceeding in accordance with the laws of New York. *Id.* at 3-4. On September 1, 2011, the Peruvian court refused to recognize the New York divorce. *See id.* at 4-7. On January 21, 2014, that court ordered that Ricardo pay Carmen 25 percent of his monthly income, finding that the two were "spouses" who "owed each

other…support." *See* Judgment of the Superior Court of Justice in and for Lima ("Peruvian Ct. Grant of Support"), DE [44-5] at 6.

At some unspecified time, Ricardo married Luna.[3]  *See* Certificate of Disposition, Matrimonial Action ("2016 Divorce Judgment"), DE [1-2], Ex. D.  In his October 15, 2010, Designation of Beneficiary form for the life insurance policy he held, he identified Luna as his "wife."  *See* Designation of Beneficiary, DE [1-2], Ex. C. Ricardo divorced Luna on December 19, 2016.  *See* 2016 Divorce Judgment.  Then on March 2, 2017, Ricardo married Angela.  *See* Certificate of Marriage Registration, DE [1-2], Ex. E.   Ricardo died on May 13, 2020.  *See* Carmen Liliana Saenz Feijoo de Caballero's Response to Angela M. Caballero's Rule 56.1 Statement ("Carmen Resp. to Angela Rule 56.1 Statement"), DE [36] at 2, ¶ 8.

## B. Ricardo's Life Insurance Policy

On March 2, 1987, Ricardo began working for Goya.  *See* Group Life Claim Application Proof of Loss Statement ("Proof of Loss"), DE [1-2], Ex. B.  On January 1, 1990, he elected into a group life insurance policy (the "Policy") for Goya employees held by the Reliance Standard Life Employer Trust.[4]  *See id*; Policy, DE [1-2], Ex. A. Ricardo named Luna as his sole beneficiary under the Policy on October 15, 2010, and he did not elect any contingent beneficiaries.  *See* Designation of Beneficiary.  The Policy entitled Ricardo's beneficiary at death to receive $50,000.  *See* Policy at 8; *see also* Proof of Loss.

---

[3] Nothing in the record indicates the date on which Luna and Ricardo married.
[4] While the relationship between this Trust and Reliance is not clear from the record, Reliance states that it issued the Policy to Goya.  *See* Compl., ¶ 7.

The Policy section addressing beneficiary selection and payment states as follows:

## BENEFICIARY AND FACILITY OF PAYMENT

<u>BENEFICIARY</u>: The beneficiary will be as named in writing by the Insured to receive benefits at the Insured's death. This beneficiary designation must be on file with us or the Plan Administrator and will be effective on the date the Insured signs it. Any payment made by us before receiving the designation shall fully discharge us to the extent of that payment.

If the Insured names more than one beneficiary to share the benefit, he/she must state the percentage of the benefit that is to be paid to each beneficiary. Otherwise, they will share the benefit equally.

The beneficiary's consent is not needed if the Insured wishes to change the designation. His/her consent is also not needed to make any changes in this Policy.

If the beneficiary dies at the same time as the Insured, or within fifteen (15) days after his/her death but before we receive written proof of the Insured's death, payment will be made as if the Insured survived the beneficiary, unless noted otherwise.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, any benefits due shall be paid to the first of the following classes to survive the Insured:
> (1) the Insured's legal spouse, legally recognized civil union/domestic partner;
> (2) the Insured's surviving child(ren) (including legally adopted child(ren)), in equal shares;
> (3) the Insured's surviving parents, in equal shares;
> (4) the Insured's surviving siblings, in equal shares; or, if none of the above,
> (5) the Insured's estate.

We will not be liable for any payment we have made in good faith.

<u>FACILITY OF PAYMENT</u>: If a beneficiary, in our opinion, cannot give a valid release (and no guardian has been appointed), we may pay the benefit to the person who has custody or is the main support of the beneficiary. Payment to a minor shall not exceed $1,000.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, we may pay up to $2,000 of the benefit to the person(s) who, in our opinion, have incurred expenses in connection with the Insured's last illness, death or burial.

The balance of the benefit, if any, will be held by us, until an individual or representative:
> (1) is validly named; or
> (2) is appointed to receive the proceeds; and
> (3) can give valid release to us.

The benefit will be held with interest at a rate set by us.

We will not be liable for any payment we have made in good faith.

Policy at 18.  Further, any changes to or waivers of this Policy were required to be in writing and signed by an executive officer at Reliance.  Policy at 12.   At the time of Ricardo's death, Luna was still named as the beneficiary on the Policy.  *See* Carmen Resp. to Angela Rule 56.1 Statement, ¶ 5.  Subsequently, Carmen, Luna, and Angela each submitted a claim for benefits to Reliance.  *See* DE [1-1], Exs. B, G-J, K-L to Compl.

### C.  Procedural History

Based on the above, Reliance commenced this interpleader action on January 13, 2021.  *See* Compl.  The Complaint requested that the Court:  (i) direct Plaintiff to deposit the Policy proceeds into the registry of the Court; (ii) discharge Reliance from any liability relating to those proceeds, except to whichever individual the Court concludes is entitled to them; (iii) enjoin any parties from bringing an action related to those proceeds against Plaintiff; and (iv) award Reliance fees and costs.  *Id.* at 5.  On February 14, 2021, Angela answered the Complaint and filed a crossclaim for a

declaratory judgment in her favor against Luna and Carmen. *See* DE [7]. On January 12, 2022, Carmen answered the Complaint. *See* DE [19]. The Clerk of Court entered a Certificate of Default against Luna on September 15, 2022, after Luna failed to appear. *See* DE [25]. On December 27, 2022, Reliance moved for default judgment against Luna. *See* DE [28]. Luna filed a letter with the court on January 26, 2023, stating that she would not "be asserting any claim of an entitlement" to the Policy's proceeds. *See* Letter from Christopher M. Pisacane to Judge Gary R. Brown ("Letter Disclaiming Interest"), DE [33]. On February 1, 2023, Judge Brown entered an order concluding that Luna had relinquished any claim to the proceeds and dismissing her from the case. *See* Order Dated Feb. 1, 2023. On March 9, 2023, the Court granted Reliance's motion to interplead, deposit funds and for discharge from the action. *See* DE [38]. The Policy proceeds were deposited with the registry of the Court on April 6, 2023. *See* DE [40]. On July 25, 2023, Carmen and Angela cross-moved for summary judgment. *See* Angela Mot. for Summary Judgment; Carmen Cross-Mot. For the reasons set forth herein, the Court respectfully recommends denying Angela's Motion for Summary Judgment in its entirety and granting Carmen's Cross-Motion in its entirety.

## II.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Cross-motions for summary judgment do not alter the basic standard, but simply require the court to

determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (*citing Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).  Each movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).  In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once a movant has met her initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered

'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-CV-427, 2012 WL 4380921, at *6, n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment"). Questions of law are not subject to the same rule. "[T]he Court may decide all questions of law on summary judgment." *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022) (collecting cases).[5]

## III.    DISCUSSION

Defendants Carmen and Angela each move for summary judgment as to her claim for the proceeds of the Policy. Applying the standards above to the undisputed facts on the record, and for the reasons set forth below, the Court respectfully recommends that (i) Angela's motion for summary judgment be denied; and (ii) Carmen's cross-motion for summary judgment be granted.

---

[5] Because Carmen has received the benefits of legal counsel during motion practice, this Court will not apply the special consideration customarily granted to *pro se* litigants with respect to documents that the Hofstra Pro Se Legal Assistance Program has helped her draft. *See Askins v. Metro. Transit Auth.*, No. 1:19-CV-4927-GHW, 2020 WL 1082423, at *3 (S.D.N.Y. Mar. 5, 2020).

### A. ERISA Pre-empts NY EPTL § 5-1.4(a).

Initially, Angela argues that the New York Estates, Powers and Trusts Law ("NY EPTL") § 5-1.4(a) governs beneficiary determination under the Policy. *See* Friedman Aff. in Support of Angela Mot., ¶¶ 12-13; Affidavit of Angela M. Caballero in Support of Motion for Summary Judgment ("Angela Aff. in Support of Angela Mot."), DE [42-3], ¶¶ 11-12.  Under NY EPTL § 5-1.4(a), which provides that "a divorce… revokes any revocable…disposition or appointment of property made by a divorced individual to, or for the benefit of, the former spouse, including… by beneficiary designation in a life insurance policy," Ricardo's divorce from Luna would revoke her interest in the Policy proceeds.  Angela asserts, without citation to legal authority, that because Luna's interest in the proceeds was revoked via divorce, Angela, in her individual capacity or as administrator of the Decedent's estate, should receive those proceeds. *See* Friedman Aff. in Support of Angela Mot., ¶ 14; Angela Aff. in Support of Angela Mot., ¶ 13.

A state law such as the NY EPTL, however, is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, when that law "'relate[s] to any employee benefit plan' covered by ERISA." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146, 121 S. Ct. 1322, 1324 (2001) (citing 29 U.S.C. § 1144(a)).  In terms of coverage, ERISA "applies generally to all employee benefit plans sponsored by an employer or employee organization," unless an enumerated exception applies. *D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125, 127, 113 S. Ct. 580, 582 (1992); *see* 29 U.S.C. § 1003 (a), (b).  An employee benefit

10

plan includes "any plan… established or maintained by an employer… for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance… benefits in the event… of death." 29 U.S.C. § 1002 (1), (3). Where a state law "binds plan administrators to a particular choice of rules for determining beneficiary status" and requires them to "pay benefits [according] to state law, rather than [according to] plan documents," that law "implicates an area of core ERISA concern" and is pre-empted. *Egelhoff*, 532 U.S. at 147, 121 S. Ct. at 1327 (holding that ERISA pre-empted a Washington statute that revoked an ex-spouse's interest in the nonprobate assets of her deceased former husband, whom she had divorced). Consistent with these parameters, the Second Circuit has concluded that ERISA pre-empts state law claims involving the determination of a proper beneficiary in a life insurance policy. *See, e.g., Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 14 (2d Cir. 1993); *Metro. Life Ins. Co. v. Giscombe*, No. 19-CV-4463 (MKB) (CLP), 2022 WL 2467066, at *7 (E.D.N.Y. Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 2704572 (E.D.N.Y. July 12, 2022); *Connecticut Gen. Life Ins. Co. v. Mitchell*, No. 94-CV-4648 (LAP), 1995 WL 469714, at *5 (S.D.N.Y. Aug. 8, 1995). Accordingly, where ERISA preempts a state law, the relevant language of a plan governed by ERISA will determine the appropriate beneficiary of that plan, even if that state law would yield a different result. *See Egelhoff*, 532 U.S. at 148-150, 121 S. Ct. at 1327-29; *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 239 (2d Cir. 2014) ("when a [state law] claim is completely preempted, 'the law governing the complaint is exclusively

11

federal"') (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 61, 129 S. Ct. 1262, 1273 (2009)).

Based on these standards, the Court concludes that the Policy is governed by ERISA, and NY EPTL § 5-1.4(a) is preempted. The Policy is maintained by Goya to provide insurance in the event of death to its employees and is thus an "employee benefit plan" within the statutory definition. *See* Policy at 2, 3; 29 U.S.C. § 1002 (1), (3). No statutory exception applies. *See* 29 U.S.C. § 1003. The Policy is therefore subject to ERISA. *Greater Washington Bd. of Trade*, 506 U.S. at 127, 113 S. Ct. at 582. Further, NY EPTL § 5-1.4(a), like the state statute that the Supreme Court in *Egelhoff* concluded was pre-empted by ERISA, "binds plan administrators" to determine beneficiary status in accordance with state law when the named beneficiary divorced the decedent prior to his death, rather than according to the terms of the Policy. *See Egelhoff*, 532 U.S. at 146, 121 S. Ct. at 1327. Accordingly, the Court determines that, here, ERISA preempts NY EPTL § 5-1.4(a) with respect to the beneficiary determination. *See id.* The Court therefore applies ERISA, and not NY EPTL § 5-1.4(a), to determine who is the proper beneficiary under the Policy.

## B. Under ERISA, Elena Luna was the Policy's Beneficiary.

ERISA "generally obligates administrators to manage ERISA plans 'in accordance with the documents and instruments governing' them." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 288, 129 S. Ct. 865, 868 (2009) (quoting 29 U.S.C. § 1104(a)(1)(D)). Thus, ERISA requires that "benefits be paid… in accordance with plan documents." *Egelhoff*, 532 U.S. at 150, 121 S. Ct. at 1329.

Where a policyholder has named a beneficiary in accordance with the plan documents and has not subsequently changed his beneficiary in a manner approved by the plan, that person remains the designated beneficiary. *Kennedy*, 555 U.S. at 304, 129 S. Ct. at 877. A subsequent divorce, without more, does not change a beneficiary's status. *Id.* (holding that an ex-spouse who was still named as the decedent's beneficiary to an ERISA-governed plan after their divorce remained the designated beneficiary where neither the ex-spouse nor the decedent had followed plan procedures to change the designation); *see Hess v. Wojcik-Hess*, No. 1:08-CV-789 (GLS) (RFT), 2010 WL 396284, at *5 (N.D.N.Y. Jan. 26, 2010) ("The Second Circuit has cited with approval other Courts of Appeals' holdings that where the beneficiary designation has not been changed, a divorce agreement, divorce decree, or testamentary provision that appears to change the beneficiary is ineffective.")

Here, Luna is the proper beneficiary to the Policy under ERISA.[6] It is not in dispute that at the time of Ricardo's death, Luna was the named beneficiary on the Policy. *See* Designation of Beneficiary; *see also* Carmen Resp. to Angela Rule 56.1 Statement, ¶ 5. Further, neither Defendant claims that Ricardo ever attempted to change this designation, let alone did so in accordance with the terms of the Policy. Because ERISA pre-empts NY EPTL § 5-1.4(a), Luna and Ricardo's 2016 divorce has no effect on her designation, and she is the proper beneficiary of the plan.

---

[6] As the Court explains below, Luna's failure to assert a claim in this interpleader action nevertheless voids any right she holds to the proceeds of the Policy.

### C. Elena Luna Has Not Asserted a Claim in this Interpleader Action.

Despite her status under ERISA, Luna cannot recover the proceeds of the Policy.  In an interpleader action, a court "determine[s] the rights of...competing claimants to the fund" at issue.  *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988); *see Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013) (after discharging a plaintiff, "the Court adjudicates the claims among the remaining adverse parties").  To prevail in an interpleader action, a defendant must assert a claim.  "The failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the res can be viewed as forfeiting any claim of entitlement that might have been asserted."  *Metro. Life Ins. Co. v. Little*, No. 13-CV-1059 (BMC), 2013 WL 4495684, at *2 (E.D.N.Y. Aug. 17, 2013); *see Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 153 (2d Cir. 2016) (a defendant is required to "litigate its claim in the context of the same proceeding as competing claimants, so that the District Court can minimize or eliminate the risk of double payment"); *Prudential Ins. Co. of Am. v. Wisneski*, No. 18-CV-15261 (MCA) (LDW), 2019 WL 2412928, at *2 (D.N.J. May 13, 2019), *report and recommendation adopted*, No. 18-CV-15261, 2019 WL 2411762 (D.N.J. June 7, 2019) ("by not filing a responsive pleading, defendant... chose not to assert a claim to the funds at issue.")

Luna has not only failed to assert a claim in this proceeding—she has expressly *disclaimed* her interest in the proceeds of the Policy.  *See* Letter Disclaiming Interest. As a result, she has forfeited her entitlement to recover the benefits that are at the

14

heart of this interpleader action. *See Little*, 2013 WL 4495684, at *2. Accordingly, only Carmen and Angela remain as potential beneficiaries. *See Bank of Am., N.A. v. Morgan Stanley & Co. Inc.*, No. 10-CV-6322 (RJH), 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011) (disbursing interpleader funds to the sole defendant to assert a claim, where other defendants had failed to assert a claim or actively disclaimed their interest without conducting a merits analysis of the potential claims of the other defendants).

### D. New York Did Not Have Jurisdiction over Ricardo's Divorce from Carmen.

Carmen claims that the divorce judgment Ricardo obtained against her in 1985 was invalid because she was not served with notice of the summons and complaint in that action, and there is no evidence to the contrary. *See* Carmen Cross-Mot. at 6-11. A federal court is not bound by a judgment rendered in a state court if that state court lacked personal jurisdiction. *Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704-05, 102 S. Ct. 1357, 1365-66 (1982). To establish personal jurisdiction in a divorce action, New York requires that the summons and complaint be served upon the defendant in accordance with New York Civil Practice Law and Rules ("NY CPLR") § 308. *Caban v. Caban*, 116 A.D.2d 783, 784, 497 N.Y.S.2d 175, 176 (3d Dep't. 1986) (holding that state court lacked jurisdiction over defendant in a 1984 divorce action where plaintiff had not effected personal service). In 1985, the effective version of NY CPLR § 308 permitted personal service in a matrimonial action only by delivering summons directly to the person served or by seeking a court order to effect alternative service. *See* NY CPLR § 308,

15

as amended by L.1971, ch. 176.  Further, a court may not rely on *in rem* jurisdiction over the marital status in a divorce action if the defendant does not receive summons by personal service, publication (*see* NY CPLR § 315) or another method authorized by NY CPLR § 308.  *See* NY DRL § 232(a) (disempowering a court to render a default judgment in a divorce action against a defendant without summons.)

Here, the New York state court lacked jurisdiction, either personal or *in rem*, over Ricardo's divorce from Carmen.  The Divorce Judgment states as its basis for jurisdiction that Carmen was served personally in New York.  *See* 1985 Divorce Judgment at 1.  Because she did not appear, the state court granted a default judgment against her.  *Id.*  Carmen, however, did not leave Peru between 1973 and 2021.  *See* Certificate of Migratory Movement, DE [46-2], at 3, 6; Carmen Rule 56.1 Statement, ¶ 3.  She could not have been personally served, in accordance with state law in effect in 1985, with the divorce summons and complaint in New York, despite the assertion in the Divorce Judgment to the contrary.  *See* 1985 Divorce Judgment at 1.  In fact, the Peruvian court's refusal to acknowledge the Divorce Judgment was based in part on its finding that Carmen was not properly served.  *See* Resolution, at 1-2, 4.  Further, there are no allegations or evidence that Carmen was personally served anywhere else or that the New York State court obtained *in rem* jurisdiction via summons by publication, as provided for by NY CPLR § 315.  Absent such evidence, there is no genuine issue for trial as to whether Carmen received the required notice of Ricardo's divorce action against her.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87, 106 S. Ct. at 1356 (1986).  Accordingly, the Court concludes

that the New York State court lacked jurisdiction over the divorce action the Decedent brought against Carmen, and the two remained married at the time of Ricardo's death.

### E.  Ricardo's Subsequent Marriages Were Invalid.

A marriage is absolutely void if one party to the marriage already has a living spouse, unless the first marriage was previously dissolved or annulled.  NY DRL § 6. In New York, "when a court is confronted with the claim that a formal second marriage is invalid because of the existence of a valid first marriage, a strong presumption of validity attaches to the second marriage." *De George v. Am. Airlines, Inc.*, 338 F. App'x 15, 18 (2d Cir. 2009) (citation omitted).  "The burden is on the first spouse to rebut this presumption." *Id.*  That spouse may meet her burden by showing that she remained married to the decedent at the time of the formal second marriage. *Id.* at 19.  For the reasons stated above, Carmen has met this burden.  Because this Court determines that Ricardo's divorce from Carmen was ineffective, his subsequent marriages were void, and she remained his legal wife at the time of his death.  *See id.* (concluding that a second marriage was void where the initial spouses had never dissolved the first marriage).

### F.  Neither Laches nor Estoppel Bar Carmen's Claim.

Angela argues that even if her marriage to Ricardo was void, Carmen's claim to the Policy's proceeds is barred by estoppel and laches.  *See* Angela Aff. in Support of Angela Mot., ¶ 16; Friedman Aff. in Support of Angela Mot., ¶¶ 17-21.  Equitable estoppel and laches are distinct defenses.  *See Fed. Trade Comm'n v. Consumer Health Benefits Ass'n,* No. 10-CV-3551I (LG) (RLM), 2011 WL 13295634, at *6

(E.D.N.Y. Oct. 5, 2011).  Equitable estoppel is an available defense where a defendant shows that "(1) that [a co-defendant] made a material misrepresentation, (2) upon which the [first defendant] relied, (3) to [her] detriment." *Clear Channel Outdoor, LLC v. City of New Rochelle*, No. 20-CV-9296 (NSR) (AEK), 2022 WL 12404476, at *8 (S.D.N.Y. Oct. 20, 2022) (citing *Consumer Health Benefits Ass'n*, 2011 WL 13295634, at *6).  The party against whom equitable estoppel is being asserted "must have made 'an actual misrepresentation'" if no fiduciary relationship exists.  *Id*. (citing *Koral v. Saunders*, 36 F.4th 400, 409–10 (2d Cir. 2022)).  Angela has neither claimed, nor produced any evidence to show, that Carmen made an "actual misrepresentation" to her about the status of Angela's marriage to Ricardo.  To the contrary, Angela argues that "neither Carmen, nor her son, ever mentioned anything to Angela…about her divorce being invalid."  Friedman Aff. in Support of Angela Mot., ¶ 20.  Accordingly, equitable estoppel is inapplicable.

A party's claim is barred by laches only when she has "inexcusably slept on [her] rights."  *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019).  Accordingly, an "affirmative step to enforce [a party's] rights" can justify a delay in asserting a claim.  *Eppendorf-Netheler-Hinz GMBH v. Enterton Co.*, 89 F. Supp.2d 483, 486 (S.D.N.Y. 2000), *aff'd sub nom. Eppendorf-Netheler-Hinz GMBH v. Nat'l Sci. Supply Co.*, 14 F.App'x 102 (2d Cir. 2001).  Courts in this Circuit have analyzed the applicability of laches to claims that a subsequent marriage is invalid by assessing (i) whether the original spouse knew of the divorce sought by her spouse and failed to act on it, and (ii) whether the subsequent spouse relied upon the original spouse's

18

inaction. *See, e.g., Pascucci v. Bowen*, 659 F. Supp. 1002, 1005 (E.D.N.Y. 1987) (finding that decedent's first wife had not failed to act in response to receiving a divorce decree and declining to apply laches); *McMurray v. Time, Inc.*, No. 88-CV-6903 (LBS), 1989 WL 140248, at *4 (S.D.N.Y. Nov. 13, 1989), *aff'd*, 904 F.2d 34 (2d Cir. 1990) (concluding that a first wife's failure to challenge their divorce during her husband's life barred her claim).

Carmen's claim is not barred by laches. Angela has offered no evidence that Carmen knew of the existence of the 1985 Divorce Judgment until 2011, when Ricardo presented it to the Peruvian Court in his petition for recognition of that judgment. *See* Resolution at 3. In the same proceeding, Carmen answered the Decedent's petition and challenged the validity of the divorce he obtained. *See id.* at 3-4. She then received two Peruvian judgments affirming her status as his legal wife. *See id.*; *see also* Peruvian Ct. Grant of Support at 5-6 (referring to Carmen and Ricardo as "spouses" and ordering the Decedent to pay support because of their marital status). Carmen thus did not sleep on her rights or fail to act on the divorce judgment she now challenges. *See Pascucci*, 659 F. Supp. at 1005 (finding that where a first wife received advice from her attorney that a divorce judgment sent to her by her husband was invalid, she had not acquiesced to the judgment); *Sorrentino v. Mierzwa*, 302 N.Y.S.2d 565, 569, 25 N.Y.2d 59, 63-64 (1969) (holding that a first wife who received a family court determination that she was still married to her deceased husband was entitled to rely on that order's determination of her marital status). Further, Carmen is a long-time Peruvian resident. It is logical that she relied on the

Peruvian court's judgment in her favor as to her marital status and her entitlement to spousal support.  Because Carmen's delay in challenging the 1985 Divorce Judgment in this proceeding is excusable and she acted promptly to protect her rights, the Court need not consider whether Angela has been prejudiced.  Laches is inapplicable to Carmen's claim.

## G. Carmen is Entitled to the Proceeds of the Policy.

Angela and Carmen seek judgments that each is entitled to the proceeds of the Policy.  As set forth above, ERISA requires that "benefits be paid…in accordance with plan documents."  *Egelhoff*, 532 U.S. at 150, 121 S. Ct. at 1329.  The Policy, however, provides a hierarchical list of alternate beneficiaries only if the named beneficiary has predeceased the insured or was never named at all.  *See* Policy at 18.  ERISA is "silent on the matter of which party shall be deemed beneficiary among disputing claimants."  *Krishna*, 7 F.3d at 14 (citation omitted).  "When ERISA preempts a state law but is itself silent on the relevant issue, federal courts create a federal common law of rights and obligations under ERISA regulated plans."  *Aetna Life Ins. Co. v. Frank*, 592 F. Supp. 3d 317, 323 (S.D.N.Y. 2022) (citation omitted).  Federal common law addressing this factual circumstance—where a beneficiary has validly disclaimed her interest in a policy and the policy language does not include instructions in the event of disclaimer—is limited.  In *Prudential Insurance Company of America v. Athmer*, the Seventh Circuit stated that "the usual consequence when a primary beneficiary disclaims or is forced to disclaim an interest under an insurance policy, will, pension plan, or other such instrument is that the contingent beneficiary takes

in the place of the primary one."  178 F.3d 473, 476 (7th Cir. 1999).  Here, the Policy provides for a hierarchy of contingent beneficiaries, of which the Decedent's "legal spouse" is first.  *See* Policy at 18.

Redress to state law yields the same result.  "Where [ERISA] leaves an issue open and no federal common law exists to address it… resort may be had to state law."  *Grabois v. Jones*, 89 F.3d 97, 101 (2d Cir. 1996) (citation omitted).  Under New York law, a beneficiary who renounces a disposition, defined to include "a transfer created by a life insurance… contract," is treated as having predeceased the decedent. NY EPTL § 2-1.11 (b)(1), (e).  The Policy here explicitly provides that if the named beneficiary dies before the insured, the insured's "legal spouse" shall be paid benefits. As the Court explained above, Carmen was Ricardo's legal spouse at the time of his death.  Therefore, based on the undisputed facts, the Court concludes she is entitled to the proceeds of the Policy.  Accordingly, the Court recommends that Angela's motion for summary judgment be denied, and that Carmen's cross-motion be granted.

## IV.    CONCLUSION

For the reasons set forth herein, the Court respectfully recommends denying Angela's Motion for Summary Judgment in its entirety and granting Carmen's Cross-Motion in its entirety.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for all parties, except Carmen, by electronic filing on the date below.  Angela is directed to serve a copy on Carmen, who is *pro se*, via email and promptly file proof of service by ECF.  Any objections to this Report and Recommendation must be filed with the Clerk

21

of the Court within 14 days.  *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ.

P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal

the District Court's Order.  *See Ferrer v. Woliver*, 2008 WL 4951035, at *2 (2d Cir.

Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v.*

*Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central  Islip,  New  York
              December 8, 2023

                                                <u>s/ Steven I. Locke</u>
                                                STEVEN I. LOCKE
                                                United States Magistrate Judge